IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Jovan Daniels (#B-68369), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 C 1654 |
| | ) | |
| v. | ) | |
| | ) | Judge James F. Holderman |
| Obaisi Saleh, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jovan Daniels, an Illinois inmate, brought this action *pro se* against Defendants Nurse Harper and Saleh Obaisi, M.D. (incorrectly sued as Obaisi Saleh) under 42 U.S.C. § 1983. Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs. Specifically, Plaintiff alleges that he received inadequate care and treatment for what he believed to be a severe asthma attack. Currently pending before the Court is Defendants' motion for summary judgment. Defendants contend that, at the time they encountered Plaintiff, Plaintiff was not suffering from an objectively serious medical condition. Defendants also contend that they were not deliberately indifferent to the condition with which Plaintiff presented. For the reasons stated below, the Court grants Defendants' motion and enters judgment in favor of Defendants.

### BACKGROUND

**I. Northern District of Illinois Local Rule 56.1**

Because Plaintiff is a *pro se* litigant, Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2. The notice explained the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1.

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id*. (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56. 1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (explaining that statement of material facts "did not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632 (citation omitted); *see also Frey Corp. v. City of Peoria,* 735 F.3d 505, 513 (7th Cir. 2013) (citation omitted). "For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary

2

judgment.  The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them."  *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012).

In the present case, Defendants filed a Rule 56.1 Statement with factual allegations supported by citations to the record.  (R.35, Defs. Statement of Material Facts ("DSOF"); *see also* Local Rule 56.1(a).)  Plaintiff filed a response to Defendants' Rule 56.1 Statement and, for the most part, cites to materials in the record.  (R.44, Pl.'s Resp. to Defs. Statement of Material Facts ("Pl. Resp. to DSOF"); *see also* Local Rule 56.1(b)(3)(B).)  Plaintiff also filed a response to Defendants' summary judgment motion (R.43, 45 pp. 1-7, Pl.'s Resp. to Defs. Motion for Summary Judgment ("Pl. Resp.")) and a statement of additional facts (R.45 pp. 8-26, Decl. in Opp. to Defs. Motion for Summary Judgment and Exhibits ("PSOF"); *see also* Local Rule 56.1(b)(3)(C).)  Defendants replied only to Plaintiff's response brief.  (R.49, Reply Mem. in Support of Defs. Motion for Summary Judgment ("Defs. Reply").)  With the above standards in mind, the Court turns to the facts of this case.

## II.  Relevant Undisputed Facts

Plaintiff Jovan Daniels, an Illinois inmate, has suffered from asthma all his life and has had a lot of asthma attacks over the years.  (DSOF ¶¶ 5, 8; Pl. Resp. to DSOF ¶¶ 5, 8.)  Daniels' condition has been treated, at various times, with inhalers, breathing treatments, and steroid shots.  (DSOF ¶ 5; Pl. Resp. to DSOF ¶ 5.)  Sometimes inhalers work to alleviate Daniels' symptoms; sometimes they do not work, and Daniels may require alternate treatments such as breathing treatments, prednisone shots or pills, or a change of inhalers.  (DSOF ¶ 6; Pl. Resp. to DSOF ¶ 6.)

3

Daniels, who has been in the custody of the Illinois Department of Corrections since December 5, 2005, and who was housed at Stateville Correctional Center at the time of the events underlying this lawsuit (DSOF ¶ 1; Pl. Resp. to DSOF ¶ 1), last experienced an asthma attack on July 27, 2012 (DSOF ¶ 8; Pl. Resp. to DSOF ¶ 8), which is the subject of this lawsuit.

When Daniels woke up at approximately 7:30 or 8:00 a.m. on July 27, 2012, he was having difficulty breathing. (DSOF ¶ 9; Pl. Resp. to DSOF ¶ 9.) Daniels spoke with Sergeant Palmer and asked to see a doctor. (DSOF ¶ 10; Pl. Resp. to DSOF ¶ 10.) Palmer told Daniels to submit a request slip. (DSOF ¶ 10; Pl. Resp. to DSOF ¶ 10.) At Stateville, each cell house or living unit has an assigned Correctional Medical Technician ("CMT") on duty seven days a week. (DSOF ¶ 12; Pl. Resp. to DSOF ¶ 12.) If an inmate has a medical complaint, the inmate must contact the CMT in his living area or submit a medical request form to the Health Care Unit. (DSOF ¶ 12; Pl. Resp. to DSOF ¶ 12.) Inmates submit medical request forms to the Health Care Unit by completing a form and placing it in a drop box (sick call box) located in the living areas. (DSOF ¶ 12; Pl. Resp. to DSOF ¶ 12.) The CMT then evaluates the inmate's medical needs. (DSOF ¶ 12; Pl. Resp. to DSOF ¶ 12.) Treatment for minor ailments may be provided at that time; otherwise, the inmate may be referred to physician sick call or the Health Care Unit for treatment. (DSOF ¶ 12; Pl. Resp. to DSOF ¶ 12.) When an inmate requires urgent medical care, such as when experiencing an asthma attack, it is common for inmates in surrounding cells to yell out that the inmate needs immediate attention. (Pl. Resp. to DSOF ¶ 12; *see* PSOF ¶¶ 21-23, 29.)

In response to Sergeant Palmer's directive that Daniels submit a request slip, Daniels wrote a note on a blank piece of paper requesting to go to the Health Care Unit for an asthma issue and handed the note to Palmer. (DSOF ¶ 11; Pl. Resp. to DSOF ¶ 11.) Palmer, who is not a

4

defendant to this action, told Daniels that he would give the note to a "med tech." (DSOF ¶ 11; Pl. Resp. to DSOF ¶ 11.) Palmer uses the term "med tech" to refer to the CMT assigned to the living area. (DSOF ¶ 14; Pl. Resp. to DSOF ¶ 14.)

Daniels subsequently saw the note that the he gave to Sergeant Palmer in Defendant Aletha Harper's bag. (DSOF ¶ 18; Pl. Resp. to DSOF ¶ 18.) Harper was employed at Stateville as a registered nurse in July 2012, and worked on July 27, 2012, from 7:00 a.m. to 3:30 p.m. (DSOF ¶¶ 2, 17; Pl. Resp. to DSOF ¶¶ 2, 17.) Harper was assigned to Daniels' living unit to administer scheduled medications to certain inmates. (DSOF ¶ 17, Pl. Resp. to DSOF ¶ 17.) Harper was not employed at Stateville as a CMT and was not the CMT assigned to Daniels' living unit on July 27, 2012. (DSOF ¶ 16; Pl. Resp. to DSOF ¶ 16.) Daniels says that he spoke with Harper while she was on her rounds and asked her if she had his note. (DSOF ¶ 18; Pl. Resp. to DSOF ¶ 18.) According to Daniels, Harper pointed to the note in her bag and responded, "I have it right here." (DSOF ¶ 18; Pl. Resp. to DSOF ¶ 18.) Harper then told Daniels that she was going back to the medical unit after she finished her rounds and would "let them know" that Daniels needed to see them. (DSOF ¶ 18; Pl. Resp. to DSOF ¶ 18.) Daniels did not speak with Harper any further about the request. (DSOF ¶ 19; Pl. Resp. to DSOF ¶ 19.) Daniels does not know where Harper went as she continued her rounds and does not know what Harper did with his request. (DSOF ¶ 20; Pl. Resp. to DSOF ¶ 20.) Daniels also does not know if Harper spoke with the Health Care Unit or anybody else about his request. (DSOF ¶ 20; Pl. Resp. to DSOF ¶ 20.)

Defendant Harper did not see Daniels on July 27, 2012, for the purpose of making a nursing assessment and made no treatment decisions with respect to Daniels on that date. (DSOF ¶ 21; Pl. Resp. to DSOF ¶ 21.) Daniels was not one of the inmates to whom Harper administered

5

medications on July 27, 2012. (DSOF ¶ 17; Pl. Resp. to DSOF ¶ 17.) And while Daniels contends that he told Harper that he was having difficulty breathing due to an asthma attack (Pl. Resp. to DSOF ¶ 21), Harper says that she did not observe Daniels suffering from an acute medical condition or having respiratory problems. (DSOF ¶ 21; Pl. Resp. to DSOF ¶ 21.) Harper also says that, although she did not recall receiving a note about Daniels' request for medical assistance, if she represented to Daniels that she would convey his request for health care service to the medical unit on July 27, 2012, than she would have done so. (DSOF ¶ 23; Pl. Resp. to DSOF ¶ 23.)

After speaking with Defendant Harper, Daniels' condition deteriorated (DSOF ¶ 27; Pl. Resp. to DSOF ¶ 27), and at approximately 2:00 p.m., his cellmate yelled out that Daniels needed medical attention (PSOF ¶ 21[1]; Pl. Dep. 95:12-96:1.) Sergeant Palmer directed a corrections officer to take Daniels to the Health Care Unit, where Daniels was placed into a holding area outside the Health Care Unit. (DSOF ¶ 28; Pl. Resp. to DSOF ¶ 28.) Daniels was examined in the holding area by an unidentified medical technician—not one of the Defendants—who took Daniels' blood pressure. (DSOF ¶ 29; Pl. Resp. to DSOF ¶ 29.) The medical technician then left and returned about five minutes later. (DSOF ¶ 29; Pl. Resp. to DSOF ¶ 29.) When the medical technician returned, Daniels says, she told Daniels that Dr. Obaisi said that Daniels was fine and should return to his living unit. (DSOF ¶ 29; Pl. Resp. to DSOF ¶ 29.) Daniels returned to his

---

[1]The Court notes that Daniels cited to his complaint in support of Plaintiff's Statement of Fact ¶ 21. A party opposing summary judgment cannot create a disputed issue of fact by reference to his pleadings. *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (explaining that, to survive summary judgment, the nonmoving party must go beyond the pleadings and designate specific facts showing the existence of a genuine issue for trial). Plaintiff, however, testified at his deposition to the same fact, and so the Court will accept the facts for purposes of summary judgment.

cell at approximately 2:30 p.m. (DSOF ¶ 30; Pl. Resp. to DSOF ¶ 30.)

Defendant Saleh Obaisi, M.D., is a licensed physician and was employed at Stateville in July 2012. (DSOF ¶ 3; Pl. Resp. to DSOF ¶ 3.) Daniels did not see Obaisi on July 27, 2012. (DSOF ¶ 32; Pl. Resp. to DSOF ¶ 32.) According to Obaisi, no information was communicated to him on July 27, 2012, either that Daniels was suffering from an acute medical condition or having respiratory problems, and Obaisi made no treatment decisions concerning Daniels on that date. (DSOF ¶ 32.)

At approximately 11:30 p.m. on July 27, 2012, Daniels' breathing became worse. (DSOF ¶ 33; Pl. Resp. to DSOF ¶ 33.) Daniels woke up his cellmate, who called to a corrections officer and requested medical assistance. (DSOF ¶ 33; Pl. Resp. to DSOF ¶ 33.) A medical technician named Lydia arrived at Daniels' cell at approximately 12:00 a.m. on July 28, 2012 (DSOF ¶ 34; Pl. Resp. to DSOF ¶ 34), and Daniels was brought to the Health Care Unit approximately one half hour later complaining of breathing problems (DSOF ¶ 35; Pl. Resp. to DSOF ¶ 35). Neither Nurse Harper nor Dr. Obaisi was present in the Health Care Unit when Daniels arrived at 12:30 a.m. on July 28, 2012. (DSOF ¶ 36; Pl. Resp. to DSOF ¶ 36.)

At approximately 12:45 a.m. on July 28, 2012, Daniels was seen by an unidentified nurse. (DSOF ¶ 38; Pl. Resp. to DSOF ¶ 38.) The nurse noted in Daniels' medical record that she observed Daniels wheezing and administered an albuterol breathing treatment. (DSOF ¶ 38; Pl. Resp. to DSOF ¶ 38.) The nurse also telephoned Dr. Matticks, who was the on-call physician at the time, regarding Daniels. (DSOF ¶ 41; Pl. Resp. to DSOF ¶ 41.) Matticks ordered, and Daniels was administered, a 60 mg dose of prednisone (DSOF ¶ 41; Pl. Resp. to DSOF ¶ 41), which is a corticosteroid used to reduce inflammation and open the airways (DSOF ¶ 42; Pl. Resp.

7

to DSOF ¶ 42). Following administration of albuterol and prednisone, Daniels was kept in the infirmary for the remainder of the night, where he was able to breathe normally and sleep. (DSOF ¶ 44; Pl. Resp. to DSOF ¶ 44.) A note in Daniels' medical record reflects that at approximately 6:00 a.m. on July 28, 2012, he had normal and appropriate vital signs and no further complaints of shortness of breath. (DSOF ¶ 45; Pl. Resp. to DSOF ¶ 45.)

Daniels woke up between 10:00 and 11:00 a.m. on July 28, 2012, and says he started to feel short winded again. (DSOF ¶ 46; Pl. Resp. to DSOF ¶ 46.) Between 11:15 a.m. and 12:35 p.m., Dr. Obaisi made his rounds in the Health Care Unit and saw Daniels. (DSOF ¶ 47; Pl. Resp. to DSOF ¶ 47.) Obaisi observed minimal wheezing at the time of his visit with Daniels. (DSOF ¶ 48; Pl. Resp. to DSOF ¶ 48.) Obaisi assessed Daniels with asthmatic bronchitis and prescribed prednisone 60 mg for six days. (DSOF ¶ 49; Pl. Resp. to DSOF ¶ 49.) Obaisi also prescribed the use of a Qvar inhaler twice per day for six months. (DSOF ¶ 49; Pl. Resp. to DSOF ¶ 49.) Obaisi then cleared Daniels to return to the cell house. (DSOF ¶ 51; Pl. Resp. to DSOF ¶ 51.) Obaisi had no further interaction with Daniels related to this occurrence. (DSOF ¶¶ 47, 52; Pl. Resp. to DSOF ¶¶ 47, 52.) Daniels was discharged from the infirmary at approximately 1:40 p.m. on July 28, 2012. (DSOF ¶ 54; Pl. Resp. to DSOF ¶ 54.) Daniels disagreed with Obaisi's decision to release him from the Health Care Unit because, Daniels says, he still did not feel well. (Pl. Resp. to DSOF ¶¶ 48, 51.) Defendant Harper was not involved at any time in the care and treatment of Daniels in the Health Care Unit. (DSOF ¶ 37; Pl. Resp. to DSOF ¶ 37.)

After his discharge from the Health Care Unit—either later on the same day or the next day—Daniels respiratory difficulties stopped and he felt fine. (DSOF ¶ 59; Pl. Resp. to DSOF ¶ 59.) Daniels suffered no additional asthma attacks from July 27, 2012 to the time of his

8

deposition on July 18, 2014.  (*See* DSOF ¶ 61; Pl. Resp. to DSOF ¶ 61.)

Daniels subsequently brought this lawsuit under 42 U.S.C. §1983, alleging that Defendants Harper and Obaisi denied him medical attention in violation of the Constitution.  Specifically, Plaintiff alleges that neither Harper nor Obaisi reasonably responded to Daniels' need for medical care even though they both knew that Daniels was experiencing a serious asthma attack.  Defendants Harper and Obaisi now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255.  To survive summary judgment, the nonmoving party must go beyond the pleadings and designate specific facts showing the existence of a genuine issue for trial. *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).  Moreover, evidence submitted in opposition to summary judgment must be admissible at trial under the Federal Rules of Evidence, although attested testimony, such as that found in depositions or affidavits will also be considered.  *Id.*; *Scott v. Edinburg*, 346 F.3d 752, 759-60 & n.7 (7th Cir. 2003).

The Court's role in deciding a motion for summary judgment is not to evaluate the weight

9

of the evidence, to judge credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court considers the facts in a light most favorable to the non-movant. *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014). Summary judgment is appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Celotex Corp.,* 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772-73 (7th Cir. 2012) (citation omitted).

## ANALYSIS

Defendants Nurse Harper and Dr. Obaisi move for summary judgment on three bases. First, Defendants argue that Daniels was not suffering from an objectively serious medical condition at the time of Defendants' interactions with Daniels. Second, Defendants argue that they were not deliberately indifferent to Daniels' medical needs. Third, Defendants argue that Daniels suffered no harm as a result of Defendants' conduct.

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013). Prison officials may exhibit deliberate indifference to a known condition through inaction, *Gayton v. McCoy*, 593 F.3d 610, 623-24 (7th Cir. 2010); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009), or by persisting with inappropriate treatment, *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011); *Greeno*, 414 F.3d at 653-54. Prison officials might also show deliberate indifference by delaying necessary treatment and thus aggravating an injury or needlessly

10

prolonging an inmate's pain. *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. *McGee*, 721 F.3d at 480 (citing *Gomez*, 680 F.3d at 865). "[A]sthma can be, and frequently is, a serious medical condition, depending on the severity of the attacks." *Lee v. Young*, 533 F.3d 505, 510 (7th Cir. 2008) (quoting *Board v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005)). Whether asthma rises to the level of a serious medical condition, however, depends on "its degree." *Garvin v. Armstrong,* 236 F.3d 896, 898 (7th Cir. 2001).

It is undisputed that Daniels has suffered from asthma all his life and has received treatment for his asthma during his incarceration. It therefore may be inferred that Daniels' condition has been diagnosed by a physician at some point. But that is not the end of the Court's inquiry concerning whether Daniels' asthma can be considered a serious medical condition for the purpose of this lawsuit. To be held liable on a claim of deliberate indifference, the Defendants must have known that Daniels suffered from a serious medical condition at the time they interacted with Daniels and disregarded an excessive risk to Daniels' health. *See Townsend v. Cooper*, 759 F.3d 678, 689 (7th Cir. 2014). In this case, Daniels alleges that Defendants Harper and Obaisi were deliberately indifferent to his asthma, which Daniels maintains is a serious medical condition, on three occasions: (1) on the morning of July 27, 2012, when Daniels says he saw Harper with a note requesting medical care for his asthma; (2) at approximately 2:00 p.m. on July 27, 2012, when Daniels says he was taken to the Health Care Unit while suffering what he describes as an asthma attack; and (3) at approximately 12:45 p.m. on July 28, 2012, when Dr. Obaisi discharged Daniels from the Health Care Unit after receiving treatment for his breathing

problems.  To prevail on his claim, Daniels must show both that he suffered from an objectively serious medical condition and that Defendants were deliberately indifference to that condition. *See Greeno*, 414 F.3d at 652-53.  The Court will address each occurrence in turn.

A.  **Daniels' Interaction With Harper On The Morning Of July 27, 2012**

Daniels failed to identify evidence sufficient to create a disputed issue of fact concerning whether Harper was aware of an excessive risk to Daniels' health at the time of her only encounter with Daniels.  Uncontested evidence shows that on the morning of July 27, 2012, Daniels was having some difficulty breathing and wrote a note on a blank piece of paper requesting to go to the Health Care Unit for an asthma issue.  Daniels handed the note to Palmer and later saw the note in Harper's bag.  Harper acknowledged having the note.  According to Daniels, he also told Harper that he was experiencing trouble breathing, and Harper told him that, after her rounds, she would let the medical unit know that Daniels required assistance.

Harper did not see Daniels on July 27, 2012, for the purpose of making a nursing assessment and made no treatment decisions with respect to Daniels on that date.  Harper also says that she did not observe Daniels suffering from an acute medical condition or having respiratory problems.  In addition, according to Daniels, when an inmate is experiencing a serious medical condition such as an asthma attack, inmates in surrounding cells call out to the corrections officers to alert them to the inmate's need for medical attention.  At the time of Harper's rounds, however, no one had yet called out on Daniels' behalf.  It therefore cannot reasonably be inferred that Harper knew that Daniels was suffering from an objectively serious medical condition at the time Daniels saw Harper with his note.

Daniels also identified no evidence showing that Harper failed to alert the medical unit to

12

his request after she completed her rounds. Daniels concedes that he does not know where Harper went as she continued her rounds, and he does not know what she did with his note. While Harper does not recall receiving a note about Daniels' request for medical assistance, Harper submitted an affidavit stating that, had she represented that she would convey Daniels' request to the medical unit on July 27, 2012, then she would have done so. Daniels presented no evidence to the contrary. Consequently, Daniels cannot show that Harper was deliberately indifferent to his medical condition.

**B.      Daniels Visit To the Health Care Unit On The Afternoon Of July 27, 2012**

Daniels also identified no admissible evidence showing that Dr. Obaisi knew that Daniels was suffering from an asthma attack when Daniels says he presented to the Health Care Unit at approximately 2:00 p.m. on July 27, 2012. While Defendants contend that there is no record showing that Daniels was taken to the Health Care Unit on July 27, 2012, for purposes of summary judgment, Daniels presented sufficient evidence to establish that at approximately 2:00 p.m. on July 27, 2012, he was transported to the Health Care Unit for medical attention to his breathing problems. The Court therefore will assume for purposes of summary judgment that Daniels was suffering from an objectively serious medical condition at that time. But to survive summary judgment Daniels must do more than merely show that he presented to the Health Care Unit on July 27, 2012, for treatment of his breathing problems; rather, Daniels must identify some admissible evidence from which it may be inferred that Obaisi knew of his condition and ignored it.

To support his contention that Obaisi knew that he was experiencing an asthma attack on July 27, 2012, Daniels references a comment that, he says, an unidentified medical technician

13

made to him: "Dr. Obaisi said that I was fine and to send me back to my unit." A party opposing summary judgment, however, cannot create a disputed issue of fact by relying on inadmissible hearsay. *See MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011) ("A party may not rely on inadmissible hearsay to avoid summary judgment."); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial."). Here, Daniels attempts to use the unidentified medical technician's statement for the truth of the matter asserted, *i.e.,* that Obaisi was aware of Daniels' condition and determined, without examining Daniels, that Daniels was fine and should be returned to his cell. This is a classic example of inadmissible hearsay. *See* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.") Indeed, the statement is hearsay within hearsay and must be disregarded. Daniels identified no other evidence showing that Obaisi was aware that Daniels was experiencing trouble breathing on July 27, 2012. Consequently, Daniels cannot show that Obaisi was deliberately indifferent to his need for medical treatment.

C.    **Daniels' Interaction with Obaisi on July 28, 2012**

Daniels' encounter with Dr. Obaisi at approximately 12:45 p.m. on July 28, 2012, is a different story. Obaisi saw Daniels after Daniels had been admitted to the Health Care Unit for treatment of breathing problems and held overnight for observation. Based on the facts presented by the parties, Obaisi arguably should have known that Daniels was suffering from or had experienced a condition requiring medical intervention. Consequently, Daniels presented enough evidence to create a disputed issue of fact concerning whether he was suffering from an objectively

14

serious medical condition at the time of his encounter with Obaisi on July 28, 2012.

Prisoners, however, are not entitled to the best possible care or to receive the treatment of their choice. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Instead, prisoners are entitled only to "adequate medical care." *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citations omitted). For a prison medical professional to be held liable for deliberate indifference, his or her treatment decisions must be "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *McGee*, 721 F.3d at 481 (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). In other words, a prison medical professional is "entitled to deference in treatment decisions unless no minimally competent professional would have so responded under the circumstances." *McGee*, 721 F.3d at 481.

The undisputed facts show that medical personnel stabilized Daniels' condition overnight and that, at the time Obaisi encountered Daniels on July 28, 2012, Daniels no longer required immediate intervention for his breathing problems. Obaisi observed minimal wheezing at the time of his visit with Daniels and continued Daniels on the course of treatment that had alleviated Daniels' symptoms overnight, *i.e.*, 60 mg of prednisone for six days. Obaisi also prescribed an inhaler for Daniels' use over the following six months. Obaisi then cleared Daniels for return to the cell house, where Daniels' condition continued to improve. Although Daniels does not agree with Obaisi's decision to release him from the Health Care Unit at that time because, Daniels says, he still did not feel well, Daniels presented no evidence showing that Obaisi's decision to release him was blatantly inappropriate. And Daniels' mere disagreement with Obaisi's decisions is insufficient to survive summary judgment. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th

Cir. 2006) (explaining that "[m]ere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient" to establish deliberate indifference). Indeed, the fact that Daniels' condition continued to improve following his release from the Health Care Unit on July 28, 2012, and that he did not suffer a relapse, is some evidence that the treatment Daniels received from Obaisi was not constitutionally deficient.

Because there is no evidence that Defendants Harper and Obaisi were deliberately indifferent to Daniels' medical needs, Harper and Obaisi are entitled to judgment as a matter of law in their favor. Although Defendants also argue that summary judgment is appropriate because Daniels suffered no harm as a result of any alleged delay in treating his breathing problems, the Court need not address that issue because this case has been resolved on other grounds.

## CONCLUSION

For the foregoing reasons, Defendants Nurse Harper and Dr. Obaisi are entitled to summary judgment in their favor and against Plaintiff Daniels. Defendants' motion for summary judgment [34] is granted and judgment is entered in favor of Defendants. This case is terminated.

If Daniels wishes to appeal this dismissal, he may file a notice of appeal in this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). The Court advises Daniels that, if he chooses to appeal, he will be responsible for paying the $505 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Daniels may accumulate a strike under 28 U.S.C. § 1915(g).

ENTER: *James F. Holderman*

JAMES F. HOLDERMAN
Date: March 19, 2015           District Judge, United States District Court